**FILED**
EASTERN DISTRICT ARKANSAS

APR 07 2006

JAMES W. McCORMACK, CLERK
By:_____
                        DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

JUANA MICHELLE BROWN, ADMINISTRATRIX OF                     PLAINTIFFS
THE ESTATE OF LAKEISHA SHANTRAIL BROWN, DECEASED

VS.                    CASE NO. __4 - 0 6    C V 0 0 0 0 0 4 3 4 . JLH.__

CORNELL INTERVENTIONS, INC.; DR. ROBERT CHOATE;
TREATMENT SUPERVISOR JOY COLE; PROGRAM DIRECTOR
JOANN MCCOY; NURSE KIMBERLY COLCLOUGH; NURSE
HOLLY CLARK; NURSE KATRINA GARCIA; NURSE LYNETTA
BUCKLEY, NURSE POLLY KING; NURSE PENNY BRUNO;
NURSE JOYCE MOORE and NURSE BARBARA DANIELS                    DEFENDANTS

This case assigned to District Judge _____
                    COMPLAINT      and to Magistrate Judge_____

This is an action for damages arising under the United States Constitution and the laws of the State of

Arkansas. Defendants violated the rights of Lakeisha Shantrail Brown, the deceased daughter of the Plaintiff,

Juana Michelle Brown, under the Eighth Amendment of the Constitution and the laws of the State of Arkansas

when with knowing and deliberate indifference to her constitutional rights, they denied her reasonable and

necessary medical treatment for serious medical conditions, thereby causing her prolonged excruciating pain

and suffering and resulting in her untimely death. Defendants' conduct under color of state law proximately

caused the deprivation of Ms. Brown's constitutional and federally protected rights and resulted in her

wrongful death. Defendants' willful and wanton conduct gives rise to supplemental and pendant state claims.

## JURISDICTION AND VENUE

1.      Jurisdiction is conferred upon the Court pursuant to 28 U.S.C. §§1331 and 1367. These

claims arise under the Constitution and the laws of the United States, including provisions of the Eighth and

Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983. The Court has pendant

jurisdiction over all state claims for negligence.

## PARTIES

2.      Plaintiff is a resident of 21-23 Trailor City Road, Luxora, Mississippi County, Arkansas

1

72358. Plaintiff is the mother and Administratrix of the estate of Lakeisha Shantrail Brown, deceased. Lakeisha Shantrail Brown died on April 9, 2005 at Southwest Regional Medical Center, Pulaski County, Arkansas.

3.      Cornell Interventions, Inc., (hereafter referred to as Cornell), is a for profit corporation duly organized under the laws of the State of Illinois and authorized to do business in the State of Arkansas with its principal place of business in Arkansas being located at 1501 Woody Drive, Alexander, Arkansas. That Defendant Cornell is primarily engaged in the business of operating detention and correctional facilities for profit including providing correctional treatment services. The registered agent for Cornell in Arkansas is the Corporation Company, 425 West Capitol Avenue, Suite 1700, Little Rock, Arkansas 72201.

4.      At all times relevant hereto, Cornell contracted with the Arkansas Department of Human Services, Youth Services Division, to operate the Alexander Youth Services Center (AYSC) and to provide for the protection, education, healthcare, training, housing and feeding of juvenile clients of the AYSC located in Bryant, Saline County, Arkansas; the relevant contract period being August 2001 through June 30, 2005. Cornell routinely violated the terms of the contractual agreement with DHS and knew or should have known that its employees, agents and subcontractors routinely by practice, pattern and custom violated the constitutional rights of juvenile clients in the custody of AYSC and routinely failed to provide proper supervision of juveniles and to provide adequate and necessary medical care of juvenile patients in AYSC, including Lakeisha Shantrail Brown, who was pronounced dead at Southwest Regional Medical Center on April 9, 2005.

5.      At all times pertinent hereto, all of the named Defendants were employees, agents or subcontractors of Defendant, Cornell, and were acting within the scope of their employment, agency, or contractual obligations and under color of state law. Cornell is responsible and liable for the acts, and omissions of each Defendant pursuant to the doctrine of respondeat superior.

6.      *Separate Defendant, Robert Choate, M.D.*, is a resident of Pulaski County, Arkansas. At all

2

times relevant hereto Dr. Choate was a physician licensed to practice such profession in the State of Arkansas. At all times relevant hereto, Dr. Choate was practicing medicine in Alexander, Saline County, Arkansas and as such was subject to the laws, regulations and standards of care attending to physicians in this and similar localities. Further, at all times relevant hereto, Dr. Choate was an employee, agent or servant or subcontractor of Cornell and therefore his acts and omissions are also imputed and attributed to Defendant Cornell pursuant to the doctrine of respondeat superior.

7.     *Separate Defendants, Kimberly Colclough, Lynetta Buckley, Polly King* and *Holly Clark*, are all residents of Pulaski County, Arkansas.  At all times relevant hereto, nurses Colclough, Buckley, King and Clark were all practical nurses licensed to practice such profession in the State of Arkansas.  At all times relevant hereto nurses Colclough, Buckley, King and Clark were practicing nursing in Saline County, Arkansas and as such were subject to the laws, regulations and standards of care attending to licensed practical nurses, including practical nurses providing care to persons who were residents of state operated youth detention facilities in this and similar localities.  Further, at all times relevant hereto, nurses Colclough, Buckley, King and Clark were employees, agents or servants of separate Defendant Cornell and therefore their acts and omissions are also imputed and attributed to Cornell, pursuant to the doctrine of respondeat superior.

8.     *Separate Defendants, Barbara Daniels, RN, Katrina Garcia, RN, Penny Bruno, RN,* and *Joyce Moore, RN,* are all residents of Pulaski County, Arkansas. At all times relevant hereto, nurses Daniels, Garcia, Bruno and Moore were all registered nurses licensed to practice such profession in the State of Arkansas. At all times relevant hereto nurses Daniels, Garcia, Bruno and Moore were practicing nursing in Saline County, Arkansas and as such was subject to the laws, regulations and standards of care attending to registered nurses, including registered nurses providing care to persons who were residents of state operated detention facilities in this and similar localities. Further, at all times relevant hereto, nurses Daniels, Garcia, Bruno and Moore were all employees, agents or servants of separate defendant, Cornell, and therefore their acts and omissions are also imputed and attributed to Cornell, pursuant to the doctrine of respondeat superior.

3

9.      **Separate Defendant, JoAnn McCoy, Program Director,** was a resident of Pulaski County at the time of the death of Lakeisha Shantrail Brown and at all times relevant hereto employed by Cornell as the Program Director by Alexander Youth Services Center and was directly responsible for the day to day supervision of the person and activities of Lakeisha Shantrail Brown, while she was a client of Alexander Youth Services Center and in determining Lakeisha Shantrail Brown's access to prompt and appropriate medical care and treatment.  Further, at all times relevant hereto, McCoy was an employee, agent, servant or subcontractor of separate Defendant Cornell and therefore her acts and omissions are imputed and attributed to Cornell pursuant to the doctrine of respondeat superior.

10.      **Separate Defendant, Joy Cole, Treatment Supervisor,** was a resident of Pulaski County at the time of the death of Lakeisha Shantrail Brown and at all times relevant hereto employed by Cornell as the Treatment Supervisor of Alexander Youth Services Center and was directly responsible for the day to day supervision of the person and activities of Lakeisha Shantrail Brown, while she was a client of Alexander Youth Services Center and in determining Lakeisha Shantrail Brown's access to prompt and appropriate medical care and treatment.  Further, at all times relevant hereto, Cole was an employee, agent, servant or subcontractor of separate Defendant Cornell and therefore her acts and omissions are imputed and attributed to Cornell pursuant to the doctrine of respondeat superior.

11.      The Court has jurisdiction of the parties and subject matter and venue is proper.

### FACTS

12.      Alexander Youth Services Center is a detention facility for persons adjudicated as juveniles in need of supervision by the Juvenile Courts of the State of Arkansas and such facility is operated and controlled by the Arkansas Department of Human Services which is a subdivision of the State of Arkansas.

13.      Cornell Interventions, Inc., is a for profit corporation which contracted with the Department of Human Services during the time period relevant hereto to operate and control Alexander Youth Services Center and to provide supervision, education, training and to provide medical, dental and mental health care

4

(treatment services) to juvenile offenders confined by the Department of Human Services in youth detention centers including the Alexander Youth Services Center.

14.     Upon information and belief, it is alleged that in 2004 through 2005 Cornell Interventions, Inc., was paid more than 35 million dollars for operation and control of Alexander Youth Services Center and for delivery of comprehensive medical and dental services pursuant to its contract with the Arkansas Department of Human Services, including providing health care services for juveniles at Alexander Youth Service Center.

15.     The contract between Cornell Interventions, Inc., and the State of Arkansas, states that the health services Cornell provides to Arkansas Juveniles "shall be substantially equal in quality to that afforded the general population of the State of Arkansas."  Services shall reflect current established professional standards for the practice of medicine, dentistry and mental health activities.

16.     The contract between separate Defendant Cornell Interventions, Inc., and the State of Arkansas required Cornell Interventions, Inc., to establish physician and nursing care policies, procedures and protocols regarding care and treatment of juveniles in the custody of Arkansas Department of Human Services.

17.     Lakeisha Shantrail Brown was born on August 8, 1987 and was 17 years of age at the time of her death on April 9, 2005.  At the time of her death, she was a juvenile in the custody of the Alexander Youth Services Center having been in custody of Arkansas Department of Human Services since August 20, 2002.

18.     That at all times relevant hereto, all supervision of and all medical treatment rendered to Lakeisha Shantrail Brown was provided by Arkansas Department of Human Services and/or Cornell, administration staff and/or healthcare professionals who were the agents, servants, employees or subcontractors of Cornell.

19.     On December 7, 2004 Lakeisha Shantrail Brown was evaluated at the Arkansas Children's Hospital Gynecology Clinic with a diagnosis of irregular menses, constipation, and pelvic pain and Lakeisha Shantrail Brown was prescribed Yasmin to control her menses and Miralax for her constipation.

5

20.     Beginning November 18, 2004 through March 19, 2005, Lakeisha Shantrail Brown made 27 written sick call requests and submitted each written request to the nursing staff or appropriate administrative personnel at Alexander Youth Services Center.  In addition, she made repeated oral requests for medical attention and treatment to medical and administrative staff of both Cornell and Arkansas Youth Services Center through and including the date of her death.

21.     That between November 2004 and the date of her death, Lakeisha Shantrail Brown made numerous complaints to the medical and administrative staff of experiencing shortness of breath, chest pain and/or tightness, dizziness, weakness, fatigue and similar symptoms.

22.     That the medical and administrative staff between November 2004 and April 9, 2005 failed to respond to Lakeisha Shantrail Brown's numerous requests for medical attention labeling her a malcontent, seeking attention and finally refusing to honor her sick call requests and refusing to provide her necessary medical treatment, including having her evaluated and attended by physicians as required by the nursing and physicians written policies and procedures.

23.     That beginning in February, 2005 Lakeisha Shantrail Brown began to have frequent complaints of swelling in both lower extremities, shortness of breath, chest tightness and pain, dizziness, weakness, fatigue and other symptoms, and such complaints or symptoms did not dissipate prior to her death on April 9, 2005.

24.     That specifically on February 6, 2005, Lakeisha Shantrail Brown filed a Resident Grievance Form in which she complained that her written complaints of hurting in her chest and breathing problems had not been addressed and that **"all the nurses has been telling me they can not do anything. I have been hurting like this since Wednesday and the doctor refuses to see me. I feel my medical concerns are being ignored."**

25.     On February 9, 2005 separate Defendant Nurse Kimberly Colclough, LPN, wrote a note to separate Defendant Dr. Robert Choate in which she states, **"Lakeisha Brown continues to complain daily of**

6

back pain and not being able to breath. I have been recording her vital signs including pulse ox. Also have been examining her back where she says her pain is located. I have placed this on some of the multiple sick calls she turns in daily and placed in your box for review. This is becoming a problem because she is crying in tears every morning that she can't get out of bed or walk to the kitchen. She is also missing groups and gym. I have multiple staff approaching me daily on her situation. I have been instructing staff that she is to continue to participate in everything and to be held accountable for her behavior if she doesn't. I would appreciate your input on what to do regarding this situation. She also occasionally complaints of constipation. She has Miralax ordered PRN when she needs it and I have given her MOM PRN. Thank you for your attention to this matter, as it is becoming very time consuming for me."

26.     On February 10, 2005 Lakeisha Shantrail Brown filed a client sick call request complaining of tightness in her chest and difficulty breathing. There is no written documentation of Lakeisha's complaints being addressed by the medical staff, and no documentation of treatment being rendered to her.

27.     On February 5, 2005, Lakeisha Shantrail Brown complained of back and chest pains, coughing and wheezing in a written sick call request to see a physician. Separate Defendant Dr. Robert Choate, a physician and employee, agent, servant or subcontractor with separate Defendant Cornell to provide medical care to juveniles in custody of the Arkansas Department of Human Services and Alexander Youth Services Center, declined to see or treat Lakeisha stating, "Today I will decline to evaluate these complaints after discussion with nursing staff. These appear to be manipulative and not valid."

28.     Between February and April 9, 2005 Brown experienced symptoms as set forth herein daily and requested treatment almost daily, but without proper response from the medical staff.

29.     On April 7, 2005 Lakeisha Shantrail Brown was very weak and was administered pain medication by the nursing staff and without any documentation of the condition for which medication was being given or of a doctor having evaluated Brown; or having written an order for such medication. Lakeisha

7

would not get out of bed complaining of dizziness, fatigue, shortness of breath and other symptoms continuously.

30.     On April 8, 2005 Lakeisha Shantrail Brown, while on the way to the canteen, fell to the ground and was unable to stand under her own power.  She complained of dizziness, tightness in her chest, shortness of breath and was given Albuterol by staff nurses.

31.     Further on April 8, 2005, Lakeisha Shantrail Brown went to the library and laid in the office for the entire day.  The librarian, Tressa Matthews, reported that Brown was **"very sick"** and that **"she was pale, cold, weak and unable to move."**  The librarian called the administrative and medical staff to attend Lakeisha and the medical staff came to the library but rendered no treatment.  The attending nurse stated to the librarian that Lakeisha was not sick but faking.

32.     Members of the Cornell administrative staff were advised by the librarian of Lakeisha's sickness and her need of medical treatment, but no medical treatment was ordered because the administrative staff of Cornell stated that Lakeisha was faking and seeking attention and was not ill.

33.     Further, on April 8, 2005, separate Defendant Joy Cole, treatment supervisor for Alexander Youth Services Center, was advised of Lakeisha's sickness and her difficulty in walking or moving and she instructed staff employees that Lakeisha was to be made to get out of bed and walk to meals.  Defendant Cole stated to staff that Lakeisha was faking.

34.     Further, on April 8, 2005, Ms. Hicks, a life skill worker, was walking with Lakeisha and other girls to the canteen when Lakeisha fell to the ground.  Ms. Hicks immediately went to Joy Cole reporting that Lakeisha was pale, sick and had fallen to the ground and requested an ambulance.  Ms. Cole advised Ms. Hicks to render no assistance to Lakeisha but rather to take the other girls to the canteen and let Ms. Cole worry about Lakeisha Shantrail Brown.  Ms. Hicks returned to Lakeisha and assisted her up the hill to the canteen.

35.     Further, on April 8, 2005, an Alexander Youth Services Center employee, Case Manager, Mary Taylor attempted to write a report detailing Lakeisha's sickness complaints and condition and such

8

employee was instructed by Joy Cole to not complete or file any written incident report regarding the condition and complaints of Lakeisha while Brown was in the canteen. No report was written in violation of established policies and procedures promulgated by separate Defendant Cornell regarding documentation by staff personnel of incidents of illness or injury regarding clients of Alexander Youth Services Center.

36.     On April 9, 2005, at approximately 6:00 a.m. Lakeisha Shantrail Brown was reported by staff persons to be in bed and not showered or dressed. Lakeisha advised staff that she was very tired and had no appetite. Staff person Eva Davis telephoned Cornell medical personnel and administrative personnel, separate Defendant Buckley and separate Defendant Cole, advising both that Davis was deeply concerned about Lakeisha because of her complaints and that she was pale and her skin very dry.

37.     Nurse Lynetta Buckley, LPN, went to attend to Lakeisha and apparently reported that all vital signs were normal but did not chart or document the vital signs taken and did not seek assessment from an RN or physician in violation of established policies, procedures, protocols, and in violation of the standard of care and its contract with Department of Human Services.  Joy Cole, treatment supervisor, and Joann McCoy, program director, both directed staff to have the patient get dressed and go to breakfast despite being advised that the medical staff had confined Lakeisha to bed rest.

38.     Joy Cole on April 9, 2005 directed Davis to have Lakeisha get dressed and walk to the cafeteria for breakfast. On the way to the cafeteria, Lakeisha complained of being very tired stopping twice to rest. Once in the cafeteria Lakeisha only ate two bites of food and took one drink of orange juice before she could eat no more. Upon leaving the cafeteria Lakeisha was too weak to walk to the next appointed station and was taken by staff to the gym where she lay on a mat on the floor for more than an hour.

39.     While in the gym on April 9, 2005 Lynetta Buckley, LPN, came to attend Lakeisha and gave her pain medication but rendered no other treatment and did not have Lakeisha assessed by an RN or physician. Nurse Buckley did not document the vital sign readings nor the condition for which the medication was administered.  Lakeisha continued to lay on the floor mat until staff person Holt attempted to walk

9

Lakeisha out of the gym at approximately 9:15 a.m. and Lakeisha sat down on the gym steps unable to walk further and immediately was unable to move and became unresponsive.

40.     Staff personnel then carried Lakeisha to the infirmary where nurses were unable to get any response from Lakeisha and did not document readings of her vital signs. Lakeisha then gave a loud gasp and fell backwards becoming totally un-responsive.

41.     City of Bryant Fire Rescue workers arrived at the Alexander Youth Services Center at approximately 9:33 a.m. on April 9, 2005 and immediately checked Lakeisha for vital signs and could find no pulse or breathing. Rescue technicians immediately began administering oxygen and CPR procedures in an attempt to resuscitate Lakeisha.

42.     Emergency medical technicians arrived and continued resuscitation efforts and transported Lakeisha by ambulance to the Southwest Regional Medical Center in Little Rock - arriving at approximately 9:57 a.m.

43.     Lakeisha Brown was admitted to Southwest Regional Medical Center at approximately 10:00 a.m. on April 9, 2005 with the primary diagnosis being code blue and having no vital signs. Resuscitation efforts continued until the code was called at 10:10 a.m. on April 9, 2005 and Lakeisha Brown pronounced dead.

44.     An autopsy was performed on Lakeisha Brown by the Arkansas State Crime Laboratory medical examiner's office on April 12, 2005. The autopsy findings revealed bilateral pulmonary thromboembolism with near complete to complete occlusion of the left main pulmonary artery, the left upper lower artery, left lower lobe artery and right lower lobe artery.

45.     Further autopsy findings included scattered peripheral thromboembolism in the upper and lower lobes, bilateral pulmonary congestion and edema, recent pulmonary infractions in the left lower lung lobe, healing pulmonary infraction in right lower lung lobe, bilateral pleural effusion and pericardial effusion in both lungs.

10

46.     The autopsy further revealed old and acute vascular thrombosis and pallor of kidneys.  The autopsy concluded that Lakeisha Brown died of bilateral pulmonary thrombosis embolism due to probable deep vein thrombosis of lower extremities.

## COUNT 1

## 42 U.S.C. § 1983

## FAILURE TO PROVIDE MEDICAL CARE AND TREATMENT

47.     Paragraphs 1 through 50 of the Complaint are incorporated by reference as through set forth herein verbatim.

48.     Defendants actions, omissions and pattern of conduct as set forth herein above violated Lakeisha Shantrail Brown's rights to be free from cruel and unusual punishment.

49.     Defendants actions, omissions and pattern of conduct as set forth herein above demonstrates deliberate indifference to the health and welfare of Lakeisha Brown and to the value of her life.

50.     Separate Defendants Cornell, Dr. Choate, Joy Cole, JoAnn McCoy , Kimberly Colclough, Holly Clark, Katrina Garcia, Lynetta Buckley, Polly King, Penny Bruno, Joyce Moore, Barbara Daniels ,and the administrative and medical staff demonstrated deliberate indifference to the health, medical treatment, and life of Lakeisha Brown by conduct, acts and omissions as follows:

(a)     Failure to address her written and expressed health and medical complaints;

(b)     Failure to have her attended by a physician, nurse, or other medical processional to treat her symptoms and conditions as set forth herein;

(c)     Failure to evaluate and monitor her medical condition;

(d)     Failure to conduct or have conducted diagnostic testing to determine causes of her symptoms and condition;

(e)     Failure to recognize the seriousness of her respiratory and cardiac complaints and conditions;

(f)     Failure to obtain appropriate medical consults to evaluate her conditions;

11

(g)     Canceling appointments with outside physicians treating her for conditions then failing to provide subsequent care or monitoring of her condition, or the effects on Lakeisha of medication prescribed by consulting physicians;

(h)     Preventing her from receiving treatment and monitoring recommended by outside physicians;

(i)     Denying reasonable request for medical treatment which resulted in marked and steady deterioration of her health over several months accompanied by physical pain and emotional suffering until her untimely death;

(j)     Refusing to provide medical care when it was obvious she was in need of immediate care and treatment;

(k)     Having non medically trained administrative staff decide whether she was in need of medical treatment, and unintentionally disregarding and preventing Lakeisha Shantrail Brown from receiving medical treatment;

(l)     Failure to comply with standing order regarding treatment of Lakeisha Shantrail Brown in the event of respiratory distress which required immediate administration of oxygen, medications and transportation to emergency room.

51.     That at all times relevant hereto, separate Defendants Choate, Cole and McCoy were employees, agents, servants or subcontractors of separate Defendant Cornell and all of their acts, omissions and conduct are the responsibility of separate Cornell pursuant to the doctrine of respondeat superior. That each such act or omission and all conduct is negligent and is a proximate cause of Lakeisha Brown's death and damages claimed herein.

52.     Separate Defendant Cornell through its policies, procedures, protocols, customs and practices displayed deliberate indifference to the health, serious medical condition and value of life of Lakeisha Shantrail Brown by its acts and omissions as follows:

(a)     Permitting nurses lacking sufficient training and skills to make medical evaluations and

12

assessments which they were unqualified to make by training and education;

(b)    By permitting unqualified nurses to determine when Brown was to receive physician care;

(c)    Failing to have a physician readily available to consult with or supervise medical staff regarding Brown's medical condition;

(d)    Permitting administrators separate Defendants JoAnn McCoy and Joy Cole who are not physicians or nurses, and who lacked medical training to make medical decisions which affected the lives of Brown and other juveniles similarly situated;

(e)    Permitting unqualified medical staff to administer prescription drugs to Brown without physician's orders or proper documentation;

(f)    Failing to require and monitor physicians and nurses properly documenting medical treatment provided to Brown and other juveniles similarly situated or to properly chart information such as vital signs and objective symptoms;

(g)    Failure to comply with standing order regarding treatment of Lakeisha Shantrail Brown in the event of respiratory distress which required immediate administration of oxygen, medications or transportation to emergency room.

53.    As a result of the violations of her civil rights by the negligent acts and omissions of separate Defendant Cornell and its employees, agents, servants and subcontractors, Lakeisha Shantrail Brown suffered the following injuries:

(a)    She suffered grave and excruciating physical pain, mental and emotional distress;

(b)    She lost the chance to be properly treated when not denied drugs which would in all likelihood have resolved all of her symptoms and conditions including dissolving the blood clots which were the cause of death;

(c)    She lost the chance to complete her education, marrying or having children and live a productive life;

13

(d)     She lost the chance to be gainfully employed and have future earnings; and

(e)     She lost her life, dying prematurely.

54.     That each negligent act or omission of each Defendant was a proximate cause of the deprivation of Lakeisha Shantrail Brown's rights and a proximate cause of her death and damages herein complained of.

## COUNT II

## MEDICAL NEGLIGENCE

55.     Plaintiff restates and incorporates by reference the preceding allegations of her Complaint as set forth herein verbatim.

56.     Separate Defendants, Nurse Lynetta Buckley, Nurse Kimberly Colclough, Nurse Holly Clark, Nurse Katrina Garcia, Nurse Polly King, Nurse Penny Bruno, and Nurse Joyce Moore, as employees/agents and servants of separate Defendant Cornell Interventions, Inc., and as licensed registered and practicing nurses, in the State of Arkansas, were at all times relevant hereto medical providers as that term is defined by the Arkansas Medical Malpractice Act.  Separate Defendants nurses Buckley, Colclough, Clark, Garcia, King, Bruno and Moore, while acting in the course and scope of their employment and in accordance with the privileges provided to them by Cornell was negligent in that they failed to use the degree of skill, training and education of similarly situated registered nurses including those who undertake to provide care for juveniles in state youth facilities, in similar localities, including but not limited to making medical assessment of juvenile clients, review of sick call and physician care request by clients; proper documentation of medical complaints, medical assessments, medical treatment prescribed and rendered to clients.  Separate Defendants, Nurse Lynetta Buckley, Nurse Kimberly Colclough, Nurse Holly Clark, Nurse Katrina Garcia, Nurse Polly King, Nurse Penny Bruno, and Nurse Joyce Moore failed to determine when physician assessment and care for Lakeisha Brown was appropriate; failed to comply with written "Cornell Care Services Policies and Procedures"; failed to comply with written Cornell "guidelines For Use of Nursing Protocols"; failed to comply

14

with written Cornell "emergency Nursing Protocol;" failed to comply with standard medical records documentation procedures and standards; failed to comply with policies, procedures, protocol and community standards regarding patients having Chest Pain and Cardiac Concerns; failure to properly monitor the effect of medications being administered to Lakeisha; failure to monitor the effects of Yasmin on Lakeisha or to monitor her potassium levels when Yasmin was being administered with hydrochlorothiazide or other medications; failure to recognize the serious side effects of Yasmin; failure to recognize the warning indicator or to assess or to conduct diagnostic testing to determine if Lakeisha had suffered a pulmonary embolus, failure to recognize signs of impending respiratory distress, failure to secure a physician consult, administering of the drug Albuterol and other drugs to Lakeisha without an examination or evaluation by a physician; failure to assess Lakeisha's specific medical complaints or written request for medical treatment or physician care; failure to see that all medical records and progress notes were properly documented after rendering of medical assessment or treatment and signed by the healthcare provided rendering treatment.  All of the aforementioned negligent acts and or omissions of separate Defendant Nurse Lynetta Buckley, separate Defendant Nurse Kimberly Colclough, separate Defendant Nurse Holly Clark, separate Defendant Nurse Katrina Garcia, separate Defendant Nurse Polly King, separate Defendant Nurse Penny Bruno, and separate Defendant Nurse Joyce Moore were the proximate cause of the death of Lakeisha Shantrail Brown, and were in violation of the standard of care attending to nurses in this and similar communities and localities.

57.    Separate Defendant Dr. Robert Choate, individually, and in his capacity and as an agent or employee, servant or subcontractor of separate Defendant Cornell and was responsible for monitoring and supervision of medical services rendered to juvenile clients of Alexander Youth Services Center and including Lakeisha Shantrail Brown, and as a licensed medical doctor in the State of Arkansas, was at all times relevant hereto a medical care provider as that term is defined by the Arkansas Medical Malpractice Act. Separate Defendant Dr. Choate was negligent in his failure to adequately monitor, instruct and supervise nurses and administrative staff personnel employed by separate Defendant Cornell and Alexander Youth Services Center

15

included but not limited to named defendants herein, separate Defendant Nurse Kimberly Colclough, separate Defendant Joy Cole, separate Defendant Joann McCoy, separate Defendant Holly Clark, separate Defendant Nurse Katrina Garcia, separate Defendant Nurse Lynetta Buckley, separate Defendant Nurse Holly King, separate Defendant Nurse Penny Bruno, separate Defendant Nurse Joyce Moore, and as the attending physician for Lakeisha Brown, failing to evaluate the patient's medical condition and monitor her care following numerous episodes of shortness of breath, chest pain and tightness, dizziness, fatigue, bilateral edema in her lower extremities, falling down, bodily weakness, and being administered oral contraception while taking diuretics and other medications. That a standing order existed on March 1, 2005 stating "Respiratory emergency: Oxygen at 2L via nasal cannula. 1:1000 epinephrine 0.3cc, SC or subglossal, stat. Arrange transportation to emergency room." That the Defendants failed to comply to the Standing Orders.

58.     Further, separate Defendant Dr. Choate was aware that Lakeisha Brown had been examined by a gynecologist in December 2004 and had been prescribed Yasmin to help control symptoms associated with her menstrual cycle and that a return appointment with the OB/GYN was scheduled for March 2005 to monitor and evaluate the effect of Yasmin on the patient's health. Separate Defendant Dr. Choate gave nurses instruction to cancel the return appointment with the OB/GYN and failed to provide follow up care to Brown or to monitor the effects of the drug on the patient, and failed to have nurses or other licensed and qualified medically trained person to provide follow up care and monitoring.

59.     Further, in March and April of 2004 the patient when examined by nursing staff members of Cornell Alexander Youth Services was noted to have shortness of breath, leg pains and lower extremity edema, tachycardia, chest tightness and pain and dizziness which are warning signs of the development of serious medical side effects of taking Yasmin. The medical symptoms are known indicators of thrombus and/or pulmonary embolus and the failure of separate Defendant Dr. Choate to examine and evaluate the patient or to monitor the potassium levels and fluid retention of the patient while he knew or should have known the patient was taking Yasmin, and failure to recognize the symptoms of an impending pulmonary embolus is negligence

16

and such negligent acts or omissions were the proximate cause of Lakeisha Shantrail Brown's death, and all such conduct is below the standard of care for physicians practicing medicine in this community or similar localities.

60.     Further, separate Defendant Dr. Choate on February 5, 2005 after conferring with members of the nursing staff regarding Lakeisha Brown's numerous medical complaints and requests for physician's care made the decision that Lakeisha's complaints were not valid and that he would no longer evaluate the medical complaints of this patient, thus effectively denying hands on physician examination and care of Lakeisha Brown, from that point until her death on April 9, 2005.  Failure to provide continued medical evaluation and treatment of Brown was negligent and below the standard of care for physicians practicing in this community or similar localities and was a proximate cause of her death and damages contributed to her.

61.     Further, in December 2004 – March 2005 Brown continued to submit written sick-call requests to be examined by a physician and to complain of separate Defendant Cornell's of the failure to assess her specific complaints regarding shortness of breath, fatigue, bodily weakness, dizziness, or to provide medical evaluation or treatment to her.  Separate Defendant Dr. Choate failed to recognize, diagnose and treat her respiratory distress or to secure a physician consult to try to verify or rule out causes of respiratory distress and such failure to conduct proper medical evaluation and treatment or to seek consulting physicians' evaluation is negligence and such negligent acts and or omissions were the proximate cause of Lakeisha Shantrail Brown's death, and such conduct by Choate was below the standard of physicians practicing in this community and similar localities.

62.     Further, separate Defendant Dr. Choate prescribed Albuterol for Lakeisha Brown, apparently as treatment for her shortness of breath or respiratory complaints, but made no medical diagnosis nor documented in notes in medical records regarding the ailment for which such drug is prescribed as treatment, and there is no record of an evaluation or examination of such patient prior to prescribing such drug for the patient.  Examination and evaluation of the patient during periods of her respiratory distress may have resulted

17

in discovery of the medical causes of such symptoms and conditions or to comply with written order regarding treatment of Lakeisha Shantrail Brown respiratory distress condition. Failure to examine and evaluate the patient prior to prescription of medication is negligence and such negligent acts or omissions were the proximate cause of Lakeisha Shantrail Brown's death. Such acts or omissions by Choate were below the standard of care for physicians practicing medicine in this community or similar localities and were a proximate cause of the death of Lakeisha Shantrail Brown and damages complained herein.

## COUNT III

## FAILURE TO EVALUATE AND TREAT RESPIRATORY DISTRESS

63.     Plaintiff restates and incorporates by reference the preceding allegations of her Complaint as set forth herein verbatim.

64.     The foregoing acts of and omission of each Defendant jointly and severally, additionally constitutes a breach of applicable standard of care in that Defendants jointly and severally between December 2004 and April 2005 received numerous written requests for medical care and treatment from Lakeisha Brown both written and oral, and request on her behalf from Alexander Youth Services Center's staff personnel and other persons familiar with and in position to observe Lakeisha Brown's condition.

65.     Given all of the known written and oral complaints by Lakeisha Brown or on her behalf, examinations which revealed objective findings of bilateral edema in both lower extremities, shortness of breath, episodes of falling with inability to stand and walk without assistance, laying down in the library for hours when obviously sick on April 8, 2005; laying down on the gym floor for more than an hour on April 9, 2005 when obviously unable to stand or walk, a physician's evaluation and or consult was a medical necessity and failure to have either a registered nurse and or physician evaluate the patient; or to follow written standing orders regarding Lakeisha Shantrail Brown respiratory distress condition was negligence and such negligence is a proximate cause of the death of Lakeisha Brown on April 9, 2005 and the proximate cause of damages as set forth herein; all such acts or omissions by all Defendants were below the standard of care for nurses and

18

physicians practicing medicine in this community or similar localities.

## COUNT IV

## FAILURE TO RESUSCITATE

66.     Plaintiff restates and incorporates by reference the preceding allegations of her Complaint as set forth herein verbatim.

67.     The foregoing acts of the Defendants jointly and severally, additionally constitutes a breach of the applicable standard of care in that Defendants jointly and severally failed to provide proper emergency cardiopulmonary resuscitation care and treatment to Lakeisha Brown at the time of her collapse and failed to have available medical supplies and equipment necessary to resuscitate her and to save her life.

68.     Further, Cornell medical staff present on April 9, 2005, at the time of Lakeisha Brown's collapse failed to immediately recognize the seriousness of her condition and waited more than 10 minutes before calling for emergency medical assistance, and waited to receive authorization from the staff medical doctor who was not present at the unit before calling an ambulance and emergency medical technicians for assistance.

69      Further, that approximately 10 minutes elapsed between the time of the patient's collapse and the Cornell medical staff began to administer CPR.  That such long and unnecessary delay was negligence and is a proximate cause of the death of Lakeisha Brown and a proximate cause of the damages complained of herein.  The acts and omissions of Defendants herein complained of were below the standard of care for nurses and physicians practicing medicine in this community or similar localities.

## COUNT V

## PUNITIVE DAMAGES

70.     Plaintiff restates and incorporates by reference the preceding allegations of her Complaint as set forth herein verbatim.

71.     The foregoing acts of the Defendants jointly and severally, additionally constitute a breach of

19

the applicable standard of care in that the Defendants conduct jointly and severally was willful and wanton, in its failure to provide proper and adequate medical care to Lakeisha Brown in willful disregard of her health and the value of her life.

72.     Specifically the Defendants jointly and severally acted in violation of the written policies of protocols and procedures established for the treatment of emergency cardiac and respiratory conditions.  Such written policies require that complaints of "chest pain and cardiac concerns, respiratory distress be assessed by physicians, registered nurses and nurse practitioners."  Cardiac emergencies require "immediate emergency care and ambulance transfer to hospital without delay."

73.     The Defendants jointly and severally for more than three months willfully and wantonly refused to objectively evaluate and or treat the patient's continued complaints and wrote reports on why Defendants jointly and severally agreed not to provide medical care and treatment in compliance with written policies, procedures and protocols and in violation of the standard of care applicable to physicians and nurses providing for the treatment and care of juvenile clients in the State of Arkansas and similar localities.

74.     Further, the Defendants jointly and severally knew or should have known that any cardiac or respiratory emergency could not be treated at the Alexander Youth Services Center as it lacked the medical facilities, supplies and qualified personnel to properly treat or resuscitate a patient in a life threatening or code blue emergency condition.  The acts of Defendants jointly and severally as set forth herein were grossly negligent and are a proximate cause of the death of Lakeisha Brown and a proximate cause of damages set forth herein.

75.     That the statutory heirs are: Juana Michelle Brown, mother; Tracy Demetrice Brown, brother; and Alma Cortez Brown, brother.

DAMAGES

76.     As a direct and proximate result of negligent acts and omissions of the Defendants, Lakeisha Shantrail Brown suffered injuries which caused her death.

20

77.     That Plaintiff, individually, and as personal representative of the estate of Lakeisha Shantrail Brown, deceased, is entitled to recover the damages all of which were proximately caused by the above described conduct of the Defendants:

(a)     Conscious pain and suffering experienced by Lakeisha Shantrail Brown during the time she was under the care of Cornell between December 2004 and April 2005;

(b)     Funeral expenses and medical bills;

(c)     Pecuniary injuries sustained by Plaintiff and Brown's siblings and father; for mental anguish;

(d)     Pecuniary injuries sustained by Plaintiff and her estate for loss of earnings;

(e)     Punitive damages, and

(f)     Loss of life suffered by Lakeisha Shantrail Brown.

## JURY TRIAL

78.     Plaintiff requests a trial by jury.

WHEREFORE, the Plaintiff, individually and as Administratrix of the estate of Lakeisha Shantrail Brown, prays for judgment against Defendants in an amount which will sufficiently compensate Lakeisha Shantrail Brown's estate for her negligence and loss of life, pecuniary injuries, funeral expenses, mental anguish, and emotional distress, for punitive damages, cost, and all other just and proper relief.

Respectfully submitted,

BROWN & McKISSIC, LLP
Attorneys at Law
Post Office Box 6116
Pine Bluff, Arkansas 71611
(870) 534-6332

BY:     _____
        Gene E. McKissic          AR Bar #07675

        _____
        Earnest E. Brown, Jr.    AR Bar #95067

21

## CERTIFICATE OF SERVICE

We, Earnest E. Brown, Jr., and Gene E. McKissic, of Brown & McKissic, LLP, do hereby certify that a copy of the above and foregoing Complaint was served upon Mr. Mike Huckabay, Attorney at Law, Regions Center, 400 West Capitol, Suite 1900, Little Rock, Arkansas 72201 on this 7th day of April 2006.

Gene E. McKissic          AR Bar #07675

Earnest E. Brown, Jr.     AR Bar #95067

22